So the afternoon is four eleven zero zero six two people of the state of Illinois versus Michael Knuth. And for the appellate, Mr. Costello, for the appellate, Mr. McNeil, you may proceed. I apologize to the justices. I was told one o'clock. I assume that was check in time. So, again, this is a policy of some 30 years, Mr. Costello, that you check in half hour early. I know, but I thought the check in time was one o'clock. This is a criminal case arising out of Logan County. The defendant was convicted of attempted murder of a police officer convicted of aggravated discharge of a weapon where he was sentenced to 10 years concurrently and sentenced to five years for unlawful possession of a weapon. He received, again, 45 years on attempted murder. The only issue before this, well, two issues, but the first issue is whether or not the people prove the defendant guilty beyond a reasonable doubt and whether or not it is against the manifest way of the evidence of the conviction. The facts are fairly straightforward. The defendant stole a gun from someone shortly before the shooting, costed two women who he knew. When one woman grew up, he demanded money from these two women. They thought he was crazy to ask for it. He acted a little bit strangely. He got out of the vehicle and pointed a gun at one of the women in the passenger side. There was a click. No one was discharged. The driver immediately threw it in reverse and struck a car behind her. The defendant shot up prior to her moving the car, which bullets struck the top of the car, sort of a van. That's undisputed. There's some other facts as to what went on before and after, not germane to the issues here. Thereafter, he's walking with his dog and he's seen and asking if certain neighbors have called the police. He finally winds up at a house near the scene of the shooting and requests that he be given a ride. The husband is home. His wife doesn't trust what's going on, and so she follows them. Knuth is sitting in the passenger seat. The defendant, the driver, notices the handgun in his left pocket, and immediately they're surrounded by police cars. The driver gets out, backs out, knowing there's going to be possible gunplay. The one officer closest to him, who had blocked the vehicle, and the wife, by the way, observes all this, and she's in the car behind. Her husband is pulled down by another police officer when the shooting starts. An officer tells Knuth, who's sitting in the passenger side, to show his hands, show his hands, show his hands. He doesn't. He sees the gun, he opens fire. Approximately six shots. The person of whom... Wait a minute, didn't your client admit that he shot first? He doesn't know. Oh, he didn't know. He didn't know, Your Honor. However, Fuge, the guy who fired first, heard no shots when he opened up on Knuth in the vehicle. Ernebush, who was the police chief of the city of Lincoln, had approached the vehicle from the other side before the shooting started, and Knuth sees him. And according to Ernebush, he points his gun out the window, which was down, towards Ernebush. Ernebush immediately backs off, and there's a dispute as to when this shot was fired. It undoubtedly was fired by Knuth. A firearms expert testified that the projectile that was found in a trajectory from where he was struck a building. Although they never did any trace examinations or any examinations on the firearms of the police. But based upon the circumstances and what happened, I would assume that you could reasonably believe that shot was fired by Knuth out the window, which struck the building. He received, himself, nine gunshot wounds. He survived. It's a case where we argue to this court that specific intent was not proven. That Knuth may have been guilty of aggravated discharge of a firearm or anything, other than attempted murder, which requires a specific intent. It is noted that the girl at the previous scene, which was probably an hour or two before, where Knuth shot up at the vehicle, he was charged there with attempted murder also. And the jury returned a verdict of not guilty as to attempted murder. I only tie this in in this fashion, that Knuth stated in his confession, and I want to clear up one point, the confession disc was redacted. It was admitted in the evidence, so it was redacted for inadmissible comments at the beginning, or not complaining of the admission of the confession. Knuth said in his confession to a state trooper, I didn't want to hurt anyone. I didn't mean to hurt anyone, and he didn't. I wanted to fire so that I would be killed by the police. Now, this man does have a bit of a psychiatric history. He was examined both for sanity and for fitness to stand trial, and found fit for both. Dr. Pan, a psychiatrist in the city of Springfield, did say it may well have been Knuth's sole intention to harm himself only he was appreciative of the consequences of his behavior. So Dr. Pan does suggest that it may have been Knuth's intent to harm himself only. Did he testify in this case? Did he testify? No. Are you justice? No, he didn't. Well, then isn't your argument of what's the evidence before the jury? Dr. Pan was not before the jury. Then why are you arguing it to us? Isn't the question whether the evidence before the jury was sufficient? You're absolutely correct, Your Honor. Okay, go ahead. Then we can disregard Dr. Pan's comments, and you will, I know that. All right, let's go back to the shooting, the attempted murder, the shot out the window. Common sense and common experience. If Knuth would have fired at Erlenbush when he was in front of the window, Erlenbush would be dead. Erlenbush testified he spun when he saw the weapon and was approximately 15 feet away to the side of the vehicle when the shot was fired. It is impossible to conceive that Knuth had intent to kill Erlenbush when he fired the shot, and he could not have fired a shot at Erlenbush after he had seen the gun because he was out of range, and Knuth at that point was being hit with at least six or seven bullets from the other officer. Now, Erlenbush did get up and approach the door. Knuth apparently still had his weapon and fired two more times. Knuth survived all this. On the record, though, Knuth said that he wished he could kill himself after he was struck by the bullets. However, he couldn't raise his arm. I mean, he was disabled from the gunshots. Now, that's something he told the officer. It's not his confession. His confession. The simple thrust of the defendant's issue is, did the people prove specific intent to kill Erlenbush? He may well have been guilty and he was charged with aggravated discharge of a weapon with Erlenbush. But the facts simply do not bear out a specific intent to kill Erlenbush based on the facts and circumstances. Now, we can divine a defendant's intent from direct and circumstantial evidence. But frankly, it just does not bear fruit to say that a man who ultimately fires a shot across the street fired that shot at Erlenbush intended to kill him. Now, cases obviously are all based on facts. But I believe that one case that's particularly apropos here is the case of People v. Jones. That's 81 Illinois 2nd 1, a 1979 case. It's cited in my reply brief. That case holds that knowledge of the consequences of an accused's act may result in death or grave bodily injury is not enough. Specific intent to kill is required. I think no one disputes that Knuth wanted to die. And no one disputes that he wanted to be killed by the police. But he did not intend to kill Erlenbush. Knuth, in his confession, says, which is in evidence, I did not intend to kill anyone. I wanted to die. Again, that's why he was examined, but determined to be found fit for trial and no insanity defense. Circumstantially and from the evidence, Knuth had to have fired when Erlenbush was out of range to him and out of line of fire. There can be no specific intent. He's guilty of aggravated discharge of a weapon to the girl. He's guilty of unlawful possession. That's not appeal of a weapon. But I don't believe that the defendant, that the jury found or could find specific intent to kill. And that's the 45 year sentence that he is under. One other point raised is that the people over objection in limine and granting their motion in limine to introduce evidence of a crime that occurred the night before. This shooting took place late in the afternoon the following day. And Knuth and another man were walking about 12.30 in the evening, a minor, he was 15 or so, and Knuth said to him, do you have any money, and the kid said no, and he said, what do you got? And the kid said, I have a cell phone. And the other man said, give it to him and hit the boy, and then allegedly, according to this boy's testimony, Knuth kicked him. There was no gun involved and we argued strenuously to the court that this was only going to show the defendant's propensity to commit a crime. By the way, that was uncharged, that incident with the minor the night before. And that it was only done to show the bad character of the defendant. The court admitted it on a continuing narrative of the crime of shooting of the woman earlier the next day and then two hours later, the confrontation with the police, the shootout with the police. We suggested that had really nothing to do and it was not a continuation of a crime. Cases hold, and our brief in the state has cited cases too, that, for example, there's a case by the Supreme Court where people were beating on someone almost to the death. And the Supreme Court said we can't hold him accountable for attempted murder because even though he's beating on someone, there was no specific intent to kill. And there was no specific intent to kill in this case of the officer. These are the facts. Case law is clear. We just suggest to this court that specific intent was approved. If the court has any further questions. We do not. Thank you. May it please the court. First about Erlenbush's testimony. He testified that he heard a flurry of gunfire when he quickly ducked out of the way from the defendant aiming the gun at him. So, in other words, Erlenbush really didn't know which shot was defendant's when he was, as counsel stated, 15 feet away by the time the fire had ended, the flurry of gunfire. Do we know how many times the defendant shot his weapon? We do not, but we know he fired at least once. So they only found one bullet? Correct. In the house across the street. But Erlenbush also testified that where they found the bullet would be in the direct path of where he was standing when the defendant brought the gun up, which he was hiding behind his leg, which shows some intent to do some harm, waiting for the policeman to get close. Erlenbush believed he was going to be shot by defendant, quickly ducked out of the way, so hard, so quick, that he fell to the ground, then hearing a flurry of gunfire. May have been 15 feet away by the time that was done, but I'm guessing, as I would in that situation, he got as far away from the truck as he could. This court in People v. Deason stated, the very fact of firing a gun at another supports the conclusion that the person doing so acted with an intent to kill. Likewise, in People v. Howard, this court stated, the jury can reasonably infer that when a defendant fires a gun towards a person, the defendant fired the gun with the intent to kill. Again, Erlenbush testified in this case that he was approaching the defendant who was a passenger in the truck, slowly approaching. When he gets really close, the defendant raises his gun up, aims it at his head, which he was hiding the gun behind his leg, pointed it at Erlenbush's head, and fired at Erlenbush, who was quickly ducking out of the way at the time. Again, he stated, if indeed the defendant did fire, like he said, consistent with his testimony, the next day he residences where the bullet might end up. They found it there. Forensic science expert testified that, indeed, the bullet was from the defendant's gun. And of course, there was the confession by the defendant himself. He told Agent Sterling in the interview that he, in fact, did shoot at a police officer and that he, in fact, did shoot first. So it was a clearly reasonable inference for the jury to make that the defendant had the specific intent to kill, especially when the courts have consistently held that aiming a gun towards a person and firing is, that in itself, enough to prove specific intent to kill. So the defendant's conviction for attempted first degree murder wasn't against the manifest way to the evidence, especially when you look at that evidence in the light most favorable to the prosecution as required. As for the other crimes evidence argument, the trial court was correct in admitting it under a continuing narrative exception. This court, in People v. Carter, expressed the benefits of the Well, it was the first in a series of events. It happened within minutes and within the immediate area of the defendant stealing the handgun that he would use later, well, for the charge of unlawful possession of a weapon by a felon and also the reason that the police treated the standoff with such caution. What's that have to do with two guys accosting a juvenile and taking the cell phone? Well, it puts the defendant in the area where the handgun was stolen from James Wolpert's residence within minutes of the assault. But there was his inmate. We know he had a gun. True, but this puts the series of events into context for the jury. What context? The beginning of how did he end up with the gun, why the police were treating him as if he had a gun, why the police were patrolling the area of DeFoy's assault, which is the state's theory as to why the defendant retreated into Wolpert's residence where he did steal the gun. So it all leads back to this first event of DeFoy being assaulted by a defendant and another person. The charges involved shooting at the woman and shooting at the police. And unlawful possession of a weapon. Based upon shooting at the woman and shooting at the police. Well, based upon him being a felon. Yeah, but that was the events that occurred the following evening, wasn't it? Correct. What was necessary to explain to the jury to understand those charges? Again, if we didn't have this, it would start with him breaking into James Wolpert's residence for no reason. Why would it start with that? That's how he obtained the weapon. Why does that matter? How is that necessary? What part of this story is inexplicable without knowing how he got the weapon? I don't know if any part would be inexplicable. Isn't that the criteria that we talked about? The inexplicable nature of the circumstances without hearing that other evidence so as to justify the continuing narrative exception? I think it... I mean, I guess they could explain the events without this, but this helps put it in context. Well, it helps dirty him up. What part is necessary for the jury's understanding? Again, as I repeat, putting him within minutes and within the immediate area of where he stole a handgun. But the stealing of the handgun has absolutely nothing to do with the crime of him possessing it. The law doesn't care whether he stole it. The law cares that he possessed it, that he discharged it unlawfully, and that he was accused of trying to kill somebody. And I would assume the police would have been patrolling the area because of the earlier gunshot that was fired and the confrontation with two women. That would alert them to... I would think that would alert them to danger more than taking a cell phone from a kid or a household burglar. I think you're pointing to the main issue here is that even if the court did abuse its discretion in allowing this, the defendant wasn't prejudiced by it. Well, Mr. McNeil, what's troubling for the court in a case like this is how do we avoid, if we affirm, because the evidence is overwhelming, how do we avoid leaving the impression with the prosecutor, gee, I guess I did nothing wrong here, or the trial judge in accepting the prosecutor's ridiculous argument that the earlier evidence was admissible? Again, I don't think prosecutors in the future would take that chance, especially in more closely balanced cases. I don't think they would take the chance that a conviction would be overturned based on other crimes' evidence being inadmissible. Again, as you said, the evidence is overwhelming here. Also, this was cured by a direct limiting instruction by the court directly before the other crime's evidence was admitted or presented. This court in People v. Carter, as well as the Supreme Court in People v. Heard, found that this was the ideal procedure for the limiting instruction being presented not only at the end of the case, but directly before the other crime's evidence. Well, except that you don't need the limiting instruction if you don't use the evidence. And the other quote from our court, Cameron, which I think is from the 1980s, by Justice Green, nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, and this is why we were acting the way that we did, and the need for the evidence is slight, the likelihood of misuse is great. So, 22 years later, we still have the same issue coming up, repeatedly. Again, I think that even if the trial court did abuse its discretion here, there was no prejudice. Due to the overwhelming amount of evidence, the outcome of the trial wouldn't have changed. Again, as you both justices have pointed out, I don't think the jury cared much about a stolen cell phone when a police officer was shot at in a standoff. As well, the limiting instruction... Mr. McNeil, both you and Mr. Costello have referred to manifest way to the evidence. I must be missing something. Isn't the relevant inquiry for us, the reviewing court, is whether any rational trial or fact could have found the elements proved beyond a reasonable doubt? What does manifest way have to do with this? I just used that as another term for the standard of review, sufficiency of the evidence standard. So you're kind of using that interchangeably? I don't know if that's incorrect or not. I apologize if it is. No, maybe it is, and I just never heard it argued quite like that. Since you both used it, both with experience, maybe I'm wrong. I just wanted to make sure I understood the standard. So again, even if the trial court did abuse its discretion in allowing that, the defendant wasn't prejudiced based on the overwhelming evidence and based on the proper limiting instruction by the trial court directly before the other crimes evidence was presented. If there are no more questions... I'd just like to hear a little bit of argument from you on the argument made by Mr. Costello on specific intent. I think you probably gleaned from questions from my two colleagues that the court is likely to find that there was inadmissible evidence presented to the jury. I think you need to address his arguments based upon a likely finding that there was inadmissible evidence. Does it therefore weaken the state's case enough so that specific intent was not proved? Assuming that the other crimes evidence was inadmissible, again, this was the defendant stealing a cell phone from a minor in the early morning hours of the day the standoff took place. As I stated, it's well settled that specific intent to kill can be proven just by someone firing a handgun or a gun towards someone else. Here, I think that there was clear evidence presented by Earl and Bush's testimony as well as the forensic science expert. I'm sure Mr. Costello is going to argue, yeah, but the jury heard evidence that he was a bad person because he had accosted a juvenile, taken the juvenile's cell phone, kicked him, and maybe that's what assisted the state in overcoming the proof beyond a reasonable doubt on specific intent. In all the evidence that was presented in this case, I think that that little bit was minuscule compared to him firing a gun earlier, not at two girls, but around two girls, him being in a standoff, hiding a gun from a policeman until he gets close and shooting towards him. I think that hitting and stealing a cell phone from a minor does not matter for the jury. Well, if you're a bad enough person to accost a minor and take their cell phone, then you're bad enough to form the specific intent to kill somebody. That's what Mr. Costello is going to argue. I think that's a leap of faith, and I think especially looking at the evidence in the light of any rational try or fact, and a reasonable inference can be made by the jury that him shooting a gun towards a policeman has the requisite specific intent to kill, especially considering the past cases I cited. Thank you. Thank you. Rebuttal, Mr. Costello? Very briefly, thank you, Justice. In answer to Justice Turner's question, we misspeak a lot. Manifest weight is not. The key here is whether or not the defendant was proven guilty beyond a reasonable doubt upon evidence, et cetera, et cetera. The state is correct that the cases they cited, that shooting at another can be proof of attempted murder. We didn't shoot anybody here. We shot out the window where there was no person there. The state did not prove specific intent because we, and the jury erroneously so found, because we shot out the window and Erlenbush wasn't there. If I may cite or speak to what Erlenbush exactly said as to this issue when it came up. Erlenbush said he couldn't see Knuth's right hand. He thought he had a gun in it. Knuth brought up his hand with a black handgun and pointed directly at Erlenbush's head. He could see the barrel directly in line with his head. No shots fired. He ducked to his left so hard he knocked himself off his feet. He heard gunfire when he was 10 to 15 feet from the truck. Now if we take Officer Fugge's testimony, no gunshots were heard or fired until he began firing at Knuth from approximately right in front of his truck. So Knuth had to have fired that single bullet when Erlenbush was totally out of danger and out of the way and firing that weapon was consistent with his attempt to kill himself. Although he was already being, I don't know if he had been hit first and fired or fired out the window before he was hit. But Fugge suggests that he fired first and then he didn't hear Knuth obviously fire. Taking that and he's not complaining about his unlawful discharge, aggravated discharge of the weapon with Danielson. He's not complaining about the fact that he is unlawfully possessing a weapon. What he is complaining about is he did not intend to kill Chief Erlenbush and he couldn't have, thank you. Well my guess is that Erlenbush probably felt as though your client tried to kill him. Does that make any difference? Yes, no it doesn't make any difference. Well I think and what happens are two different things. Well my guess is it doesn't make any difference how the alleged victim felt. It should be taken into consideration your honor. But he felt that when he was by the window and the gun was pointed at him and then he did the evasive maneuvering. Yes he did say he thought Knuth was going to kill him but Knuth never fired. Well wouldn't it be a reasonable inference that your client intended to kill him but Erlenbush seeing that jumped away out of range and did roll on the ground and that's what prevented him from being shot. With all due respect your honor, justice, Knuth never intended, we have those facts, to kill anybody. That's what he said on his confession which is in evidence. He never wanted to hurt anyone and he didn't. He didn't hurt anyone and Erlenbush, yes, may have thought he was in danger, may have thought but that doesn't matter. That really doesn't matter. Thank you. Thank you counsel.